UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ABDUL SHARIFF, MARK BARTLEY, JAMAL :
STEPHENSON, DAVID GOBERN, LEWIS    :
PURCELL, SAM JOHNSON, TERENCE      :
STEVENS, STEPHEN GOWINS, and ABDUL :
SULUK,                             :
                                   :
                  Plaintiffs,      :
          v.                       :
                                   :
PHILIP COOMBE, Commissioner of New :
York State Department of           :
Correctional Services; GLEN GOORD, :
Acting Commissioner of New York    :
State Department of Correctional   :
Services; CRISTOPHER ARTUZ,        :
Superintendent of Green Haven      :
Correctional Facility; GAIL        :
HAPONIC, Acting Deputy of          :
Administration of Green Haven      :
Correctional Facility; ROGER       :
MAINES, Supervisor of Green Haven  :
Correctional Facility; M. MULLER,  :
Maintenance Supervisor of Green    :
Haven Correctional Facility,       :
individually and in their official :
capacities, and THE STATE OF NEW   :
YORK,                              :
                                   :
                  Defendants.      :
----------------------------------X

96 Civ. 3001 (BSJ)
**Opinion & Order**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

          Plaintiffs, eight[1] disabled inmates who depend on

wheelchairs for mobility, bring this action against the State of

---

[1] Plaintiff Sam Johnson is no longer part of this litigation. (Defs.' Rule 56.1 Stmt. ¶ 1; Pls.' Rule 56.1 Stmt. ¶ 1.)  Additionally, the Court has received notice of the death of Plaintiff Gowins.  If Gowins's estate wishes to pursue this litigation, a Motion for Substitution must be submitted to the Court within ninety days after service of the statement noting the death. Fed. R. Civ. P. 25(a).  To date, the Court has received no such motion. However, because the ninety-day period has not yet elapsed, the Court has continued to include Gowins as a party in this Opinion and Order.

1

New York and six individuals employed by the New York State

Department of Correctional Services in an administrative

capacity.  Plaintiffs seek both injunctive and monetary relief

for conditions affecting disabled inmates at the Green Haven

Correctional Facility and have asserted claims pursuant to: (1)

Title II of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12131 et seq.; (2) Title V of the Rehabilitation Act of

1973 ("Rehabilitation Act"), 29 U.S.C. § 794 et seq.; (3) § 70

of the New York State Correction Law; and (4) the First, Eighth,

and Fourteenth Amendments to the United States Constitution

pursuant to 42 U.S.C. § 1983.  Before the Court is Defendants'

Renewed Motion for Partial Summary Judgment pursuant to Federal

Rule of Civil Procedure 56.  For the reasons set forth below,

Defendants' Motion is GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiffs' Fourth Amended Complaint, dated September 29,

1998,[2] alleges that Plaintiffs Abdul Shariff ("Shariff"), Mark

Bartley ("Bartley"), Jamal Stephenson ("Stephenson"), David

Gobern ("Gobern"), Lewis Purcell ("Purcell"), Terence Stevens

("Stevens"), Stephen Gowins ("Gowins"), and Abdul Suluk

("Suluk") are all inmates who are or have been incarcerated at

---

[2] Unless otherwise noted, "Fourth Amended Complaint" refers to the Complaint
dated September 29, 1998.  An earlier complaint, dated February 24, 1998, is
also designated the "Fourth Amended Complaint."  The Court presumes that this
earlier Complaint has been superseded by the more recent September 29, 1998
version.

Green Haven Correctional Facility ("Green Haven"), a prison operated by the New York State Department of Correctional Services ("DOCS").  (Fourth Am. Compl. ¶ 11.)  Due to disability or other impairment, Plaintiffs are all wheelchair-bound individuals.  (Fourth Am. Compl. ¶¶ 12-13.)  The individual Defendants are or were high-level officials of DOCS or supervisory officials with responsibilities at Green Haven. (Fourth Am. Compl. ¶¶ 17-20.)

Plaintiffs allege that a variety of conditions at Green Haven interfere with their desire to be "independent functioning human being[s]" as well as "productive citizen[s] and resident[s] of the Greenhaven community."  (Fourth Am. Compl. ¶ 23.)  Included among the conditions Plaintiffs complain of are: (1) the potholes and broken concrete in the A & B, C & D, E & F, G & H, and visiting-room yards; (2) the inaccessibility of the basketball courts; (3) the inaccessibility of certain common bathrooms throughout Green Haven; (4) the lack of accessible weights or equipment in the gym; (5) the inaccessibility of certain telephones; (6) the inaccessibility of water fountains throughout Green Haven; (7) the height of the food service counter in the Unit for the Physically Disabled ("UPD"); (8) the existence of impediments to meaningful library access; (9) hazardous conditions in the guardhouse/shacks in the recreation yards; (10) the inaccessibility of the family reunion site; (11)

3

the inaccessibility of the tier-hearing room; (12) the
frequently out of service elevator in Building-12; and (13) the
pavement in the gate corridor.  (Fourth Am. Compl. ¶¶ 25-30, 33,
35-37, 39-40, 42-43, 56, 59, 65, 73.)  Plaintiffs also allege
that several of these conditions have caused them to suffer
physical injuries, either due to alleged falls from wheelchairs
because of broken concrete or potholes at various locations
within Green Haven (Fourth Am. Compl. ¶¶ 47, 49, 50, 62, 70, 74,
76), from an alleged fall in a bathroom that was not wheelchair
accessible (Fourth Am. Compl. ¶ 54), or from a spill from a
food-serving counter that was too high for wheelchair-bound
individuals (Fourth Am. Compl. ¶ 31).

On the basis of these factual allegations, Plaintiffs'
Fourth Amended Complaint sets forth the following claims: (1)
Defendants' conduct violates Plaintiffs' rights under the Civil
Rights Act of 1871, 42 U.S.C. § 1983, and the First, Eighth, and
Fourteenth Amendments to the United States Constitution; (2)
Defendants' conduct violates Plaintiffs' rights under the
Rehabilitation Act of 1973 and the ADA, 29 U.S.C. § 794, et
seq.; and (3) Defendants' conduct violates Plaintiffs' rights
under § 70 of the Correction Law of the State of New York.
(Fourth Am. Compl. ¶¶ 83-91.)  Plaintiffs assert their claims
against the individual Defendants in both their individual and
official capacities.

On June 20, 2002, the Court issued a Memorandum and Order
(the "Order of June 20, 2002") addressing Defendants' First
Motion for Partial Summary Judgment.  In that Order, the Court
dismissed, with prejudice: (1) all claims by Plaintiffs Bartley,
Gobern, Johnson, Purcell, Stevens, and Suluk for injunctive
relief; (2) all claims for injunctive relief as to the condition
of the A & B yard; (3) all claims against the State of New York
and the six individual Defendants in their official capacities
for monetary relief pursuant to § 1983; (4) all claims against
the six individual Defendants in their individual capacities
pursuant to the ADA and the Rehabilitation Act; and (5) all
claims against all Defendants under § 70 of the New York State
Correction Law.  The Court denied the remainder of Defendants'
Motion without prejudice to renewal.  With respect to portions
of Defendants' Motion, the Court explicitly reserved decision
and identified issues for additional briefing by the parties in
a second round of dispositive motions.

Now before the Court is this requested second round of
dispositive motions, in which Defendants seek dismissal of
Plaintiffs' claims pursuant to Federal Rule of Civil Procedure
56.  As set forth below, Defendants' Motion is GRANTED in part
and DENIED in part.[3]

---

[3] At the outset, the Court notes that the papers submitted with respect to
this Motion — particularly those submitted by Plaintiffs — were woefully
lacking.  Plaintiffs' Rule 56.1 statement is rambling and cites to almost no

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "If,

---

admissible evidence.  Additionally, arguments in Plaintiffs' papers were frequently made without comprehensive — or, indeed, any — citation to supporting evidence.  In such circumstances, the Court undertook to search the record before it.  In so doing, the Court examined only those papers specifically submitted on this Motion (as well as the requested deposition testimony of Plaintiffs Bartley and Gowins).  The Court did not return to evidence not cited in Plaintiffs' (or Defendants') briefs on the instant Motion that was submitted with respect to Defendants' First (1999) Motion for Partial Summary Judgment.

as to the issue on which summary judgment is sought, there is

any evidence in the record from any source from which a

reasonable inference could be drawn in favor of the nonmoving

party, summary judgment is improper." Chambers v. TRM Copy

Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

### DISCUSSION

### I. Exhaustion of Administrative Remedies

### A. Relation Back

Defendants assert that certain of Plaintiffs' claims must

be dismissed due to Plaintiffs' failure to exhaust their

administrative remedies.  As amended by the Prison Litigation

Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a) provides that

"[n]o action shall be brought with respect to prison conditions

under section 1983 . . . or any other Federal law, by a prisoner

. . . until such administrative remedies as are available are

exhausted."  Courts have interpreted this "exhaustion

requirement" not to apply retroactively, but rather to pertain

only to actions filed after the enactment of the PLRA, which was

signed into law on April 26, 1996.  See Salahuddin v. Mead, 174

F.3d 271 (2d Cir. 1999).

In this case, Plaintiff Shariff filed his initial pro se

complaint before April 26, 1996.[4]  In that Complaint, Shariff

asserted claims against Defendants Coombe and Artuz based on the

---

[4] Shariff's Complaint was signed by Shariff on February 27, 1996, received by
the Court's Pro Se Office on March 6, 1996, and filed on April 25, 1996.

"unsafe and discriminatory situations . . . wheelchair bound inmates had to endure" at Green Haven.  (Compl. ¶ 2.)   Shariff particularly complained that the A&B yards, the visiting-room yard, and the bathrooms, telephones, and water fountains throughout the facility were hazardous or inadequate to address the needs of wheelchair-bound inmates.  (Compl. ¶ 3.)   All subsequent amended complaints — adding Plaintiffs Bartley, Stephenson, Gobern, Purcell, Johnson, Stevens, Gowins, and Suluk and additional allegations regarding the adequacy of the Green Haven facility[5] — were filed after April 26, 1996.  Thus, the question is whether Plaintiffs are required by the PLRA to exhaust their administrative remedies with respect to the allegations added after the filing of Shariff's initial Complaint.

To determine whether Plaintiffs' addition of allegations and parties relates back to Shariff's earlier pleading for the purposes of applying the PLRA's exhaustion requirement, the Court looks to Federal Rule of Civil Procedure 15(c).  See Jones v. Goord, No. 95 Civ. 8026 (WHP), 2000 U.S. Dist. LEXIS 3377, at *7 (S.D.N.Y. Mar. 15, 2000).  Rule 15(c) provides, in relevant

---

[5] It appears that Defendants Goord, Haponic, Muller, Maines, and the State of New York were also added to the litigation after the filing of Shariff's initial Complaint.  The Court, however, does not address their addition to the action given that Defendants have raised no such objection in their papers.  Indeed, Defendants have withdrawn any argument made in their Memorandum of Law in Support of their Renewed Motion for Partial Summary Judgment that Shariff was required to exhaust his administrative remedies with respect to each Defendant ultimately named in the action.  (See Defs.' Letter Dated Sept. 22, 2008, at *3.)

part, that:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
> > . . .
> >
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).  "Although Rule 15(c) speaks only to naming additional defendants and does not expressly address the relation back of amendments changing or adding plaintiffs . . . courts have nonetheless relied on the traditional factors of notice and unfair prejudice embodied in the rule."  Jones, 2000 U.S. Dist. LEXIS 3377, at *7-8; see Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997) (stating that Rule 15(c) is also applicable to a proposed change of plaintiffs).

Applying the Rule 15(c) factors to the instant action, the Court finds that the Fourth Amended Complaint relates back to

9

Shariff's initial filing only to the extent that it asserts claims regarding the specific conditions Shariff alleged were hazardous or inadequate in his initial pleading — the A&B yards, the visiting-room yard, and the bathrooms, telephones, and water fountains throughout the facility.  With respect to these conditions, the fact that additional Plaintiffs have joined Shariff in asserting these claims does not prejudice Defendants; Shariff's initial Complaint provided Defendants with notice that these conditions were subject to challenge under the ADA, the Rehabilitation Act, and the Constitution.  With respect to conditions not covered by Shariff's original filing, any later-added claims — including those added by Shariff himself — do not arise out of the same "conduct, transaction, or occurrence" set forth in the initial Complaint and thus do not relate back under Rule 15(c).  Accordingly, it follows that: (1) all Plaintiffs' claims regarding the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains throughout Green Haven are not subject to the PLRA's exhaustion requirement and, (2) all Plaintiffs' claims regarding all other conditions are subject to the PLRA's exhaustion requirement.

## B. The Exhaustion Requirement

"[T]he PLRA's exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It is the "prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Thus, compliance with a prison's grievance procedures is all that is required to exhaust. Id. The New York State Department of Correctional Services "has a well-established administrative grievance procedure for prisoners called the Inmate Grievance Program" ("IGP"). Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004). The IGP is a "three-tiered grievance system, all levels of which must be exhausted" before an action may be brought in federal court. Davis v. New York, 492 F. Supp. 2d 331, 334 (S.D.N.Y. 2007). First, an inmate must file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). The IGRC's determination may then be appealed to the superintendent. Finally, an inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC") in Albany, New York.[6] See id.; Schwartz v. Dennison, 518 F. Supp. 2d 560, 568-

---

[6] Plaintiffs assert that there is a disputed issue of fact as to whether the Green Haven IGP requires each grievance to be appealed to the CORC before it is considered fully exhausted. The Court disagrees. DOCS Directive 4040 in effect at the time of the filing of the grievances in this matter clearly indicates that when an inmate received an unfavorable decision on a grievance, an appeal through CORC was the end of the inmate's possible administrative remedies. Thus, an appeal through CORC was required for "proper exhaustion." (See Schwartz Decl. Ex. L.)

11

69 (S.D.N.Y. 2007); see also Schwartz Decl. Ex. L.  At any point in this process, an inmate who receives a favorable decision on a grievance — meaning that the facility agrees to take action — need not appeal that decision in order to exhaust, even if the promised action is not thereafter taken by the facility.  Abney, 380 F.3d at 669.

"Under the Hemphill line of cases, a court must make a three-step inquiry before it dismisses a prisoner's complaint for failure to exhaust his remedies."[7]  Harrison v. Goord, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009). First, a court must consider whether administrative remedies were "available" to the inmate.  See Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Next the court examines whether the defendant should be estopped from asserting the defense of failure to exhaust for inhibiting the ability of the inmate to pursue administrative remedies or for failing to raise or preserve the defense.  See id.  Finally, "if administrative remedies were available and the defendant[] did not forfeit the defense of failure to exhaust, a court must consider whether

_____

[7] There appears to be some debate as to whether the Hemphill three-part test survives the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81 (2006). See, e.g., Toomer v. County of Nassau, No. 07-CV-01495 (JFB)(ETB), 2009 U.S. Dist. LEXIS 38160, at *25 n.8 (E.D.N.Y. May 5, 2009) (collecting cases). Although the Second Circuit has not explicitly held that Hemphill remains good law, it has applied the three-part inquiry in recent cases.  See Vogelfang v. Riverhead County Jail Officers, No. 07-1268-cv, 2009 U.S. App. LEXIS 1914, at *5 (2d Cir. Feb. 2, 2009) (summary order).  In any event, the Court need not reach this issue because Plaintiffs' failure to exhaust is not excused under Hemphill.

'special circumstances' excuse the plaintiff's failure to pursue or exhaust administrative remedies." Vogelfang, 2009 U.S. App. LEXIS 1914, at *5 (citing Hemphill, 380 F.3d at 689-91).

In this case, Plaintiffs first assert that administrative remedies were "unavailable" to them under Hemphill, excusing any failure to exhaust. Plaintiffs set forth two related reasons why this is the case: (1) Defendants failed to make changes to the Green Haven facility despite favorable grievance determinations, and (2) as early as 1995 Defendants informed Plaintiffs that a renovation plan would be created to address inaccessibility issues, but Defendants then failed to implement this plan in a timely manner. Thus Plaintiffs assert, in essence, that administrative remedies were unavailable to them because the filing of grievances was a futile endeavor. The Court disagrees.

The record is clear that at all times relevant to this action Green Haven had in place the three-tiered Inmate Grievance Program described above. (See Schwartz Decl. Ex. L.) Although Plaintiffs assert that this grievance program was not effective, they do not seem to contend that the IGP lacked the power to take action in response to Plaintiffs' complaints. See Booth v. Churner, 532 U.S. 731, 736 n.4 (2001). Indeed, it is clear that the IGP did order changes to be made to the Green Haven facility in response to Plaintiffs' grievances (even if

13

Plaintiffs contend that those orders were never or not timely implemented). (See Schwartz Decl. Ex. M; Stephenson Dep. 15:17-18; Shariff Dep. 22:19-21, 33:5-34:3; Gobern Dep. 19:13-14, 20:6-14; 31:12-20, 32:1-11; Gowins Dep. 10:24-11:2.) Additionally, Plaintiffs' perception that the Green Haven grievance program was ineffective or that the filing of grievances was futile is insufficient to negate the PLRA's exhaustion requirement. See Harrison, 2009 WL 1605770, at *4 (stating that inmates are required to exhaust their remedies "even if they believe that administrative remedies would be ineffective or futile"); see also Booth, 532 U.S. at 741 n.6 (explaining that the Court would not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Given the existence of the IGP and its clear ability to take action to address Plaintiffs' grievances, the Court finds Plaintiffs' argument that administrative remedies were unavailable to them to be without merit.

Plaintiffs' related argument that a grievance filed by one inmate that receives a favorable determination should suffice for all inmates is similarly unavailing. In support of this position, Plaintiffs cite to Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004), a case involving an inmate who filed multiple formal grievances that were resolved in his favor but never actually

14

implemented by his facility.  Abney, 380 F.3d at 669.  Although

Abney stands for the proposition that prisoners who receive a

favorable disposition of a grievance that then goes

unimplemented have fully exhausted because no administrative

remedies remain available, it does not extend to Plaintiffs'

position that one inmate can rely upon a favorable decision and

action promised in response to a grievance filed by another

inmate to excuse his own failure to file.  Indeed, the Supreme

Court has made clear that in order to exhaust inmates must

follow the procedural requirements of their state's inmate

grievance program.  Woodford, 548 U.S. at 83-103.  In light of

the provision of New York's IGP that "[a]ll grievances must be

filed in an individual capacity" and that "[a]lthough there are

issues which affect a class of people, they are not grievable as

class actions," adopting Plaintiffs' position would contravene

the clear holding of the Supreme Court.  (Schwartz Decl. Ex. L,

at III.B & III.D.)

     With respect to the second Hemphill inquiry, Plaintiffs

contend that Defendants should be estopped from asserting the

defense of failure to exhaust because of Defendants' promised

ADA renovation plan.  More specifically — and similar to their

argument with respect to unavailability — Plaintiffs assert that

they relied to their detriment on Defendants' statements that

"[t]here was a comprehensive summary work scheduled [sic]

15

drafted which represented that each condition challenged by plaintiff [sic] in this action would be addressed." (Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, at 55.) In support of this argument, Plaintiffs cite to cases in which courts have indicated that officials' misrepresentations regarding proper procedures for filing grievances bars those officials from claiming non-exhaustion with respect to an inmate who then follows those incorrect procedures. See Heath v. Saddlemire, No. 9:96-CV-1998 (FJS/RF), 2002 WL 31242204, at *5 (N.D.N.Y. Oct. 7, 2002); Hall v. Sheahan, No. 2000 C 1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001). In this case, however, Plaintiffs have not alleged that Defendants misrepresented to Plaintiffs how to properly grieve the conditions at issue. Indeed, the numerous grievances filed by Plaintiffs indicate that Plaintiffs were fully aware of grievance procedures at Green Haven. (See Schawartz Decl. Ex. M.) Moreover, given that most if not all of the conditions at issue existed before the drafting of the renovation workplan, the Court fails to see how the existence of the workplan prevented Plaintiffs from exhausting their administrative remedies.[8] (See Schawartz Decl. Ex. M.)

Plaintiffs additionally contend that Defendants waived the

---

[8] Indeed, many of the grievances filed by Plaintiffs regarding conditions at issue in this case were filed before the workplan was allegedly created in May of 1995. (See Schwartz Decl. Ex. M; Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, at 8.)

16

exhaustion defense by failing to raise it in a timely fashion.
The Court disagrees.  Although it is not entirely clear to the
Court why Defendants' Answer was filed so long after this action
was commenced,[9] in that Answer Defendants did list as a defense
"plaintiffs' failures to satisfy jurisdictional or
administrative prerequisites and/or failure to exhaust
administrative remedies." (Answer to Fourth Am. Compl. ¶ 23.)
Furthermore, it is apparent to the Court that the parties have
produced discovery on the exhaustion issue.  (See, e.g.,
Schwartz Decl. Ex. M.)  The instant case is thus distinguishable
from the cases cited by Plaintiffs in which exhaustion was not
included in Defendants' answer, was raised after the close of
discovery, or was not raised in any pre-trial motions.  See,
e.g., Leybinsky v. Millich, No. 98-CV-0387A, 2004 WL 2202577, at
*2 (W.D.N.Y. Sept. 29, 2004); Hightower v. Nassau County
Sheriff's Dep't, 325 F. Supp. 2d 199, 205 (E.D.N.Y. 2004).
Accordingly, the Court sees no reason why Defendants should be
estopped from asserting the defense of failure to exhaust.

     With respect to the third inquiry under Hemphill, the Court
finds that no "special circumstances" exist — and Plaintiffs
have suggested none — to excuse any failure to exhaust.

     Accordingly, the Court finds that with the exception of the

---

[9] Shariff's Complaint was signed on February 27, 1996, received by the Court's
Pro Se Office on March 6, 1996, and filed on April 25, 1996.  Defendants
filed their Answer on January 11, 1999.

17

conditions addressed by Shariff's initial Complaint, in order to
maintain a claim in this action each Plaintiff must have
individually exhausted his administrative remedies with respect
to that claim.  The Court will now address what claims have been
administratively exhausted by each individual Plaintiff.[10]

### 1. Shariff

Plaintiffs assert that "Shariff filed grievances related to
every inaccessible condition at Greenhaven challenged in this
lawsuit." (Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for
Partial Summary Judgment, at 58.)  As discussed above, Shariff's
claims regarding the condition of the A&B yards, the visiting-
room yard, and the accessibility of bathrooms, telephones, and
water fountains throughout Green Haven are viable because they
are not subject to the PLRA's exhaustion requirement.
Additionally, Defendants concede that Shariff has exhausted his
administrative remedies — either because of a favorable
disposition or because he appealed through the three levels of

---

[10] In assessing which claims have been exhausted by each individual Plaintiff,
the Court has searched the following documents: (1) the Fourth Amended
Complaint; (2) the Plaintiff's deposition testimony; (3) Plaintiffs'
Memorandum of Law in Opposition to Defendants' Renewed Motion for Partial
Summary Judgment, including the chart of grievances included in Addendum B;
(4) Plaintiffs' Rule 56.1 statement submitted in opposition to Defendants'
current Motion for Partial Summary Judgment; (5) Plaintiffs' Rule 56.1
statement submitted in opposition to Defendants' previous Motion for Partial
Summary Judgment; (6) the copies of grievances submitted by Defendants as
Exhibit M to the Schwartz Declaration; (7) the CORC records contained in the
Declaration of Karen Bellamy; and (8) the affidavits of Plaintiffs Shariff,
Stevens, and Stephenson.  With respect to any specific grievance a Plaintiff
alleges he submitted in any of these documents, the Court has allowed the
Plaintiff to proceed on claims related to that grievance unless Defendants
have demonstrated that the grievance was never filed or that the grievance
was denied and not appealed to CORC.

18

the New York's inmate grievance program — with respect to the requested repairs of the J-Block (school) elevator and the condition of the C&D yards.[11]   (See Defs.' Letter Dated Sept. 22, 2008, at 3-4.)   The question that remains is whether Shariff has exhausted his administrative remedies with respect to all other claims contained in the Fourth Amended Complaint, including: (1) the height of the food service counter in the Unit for the Physically Disabled; (2) the condition[12] of the E&F and G&H yards; (3)  the accessibility/hazardous condition of the basketball courts; (4) the hazardous guardhouses/shacks in the recreation yards; (5) the lack of accessible weights or equipment in the gym; (6) the width of the tier-hearing room doorway; (7) the accessibility of the library; (8) the accessibility of the family reunion site (Fay Field); and (9) the collapse of the pavement in the "gate corridor."   Defendants have demonstrated that Shariff did not appeal any of these alleged grievances to CORC before the filing of the Fourth Amended Complaint.   (See Bellamy Decl. Ex. A, at 1-4.)   Thus, Shariff has viable claims regarding these specific issues only if the grievance he filed was resolved in his favor, a

---

[11] Defendants also concede that Shariff has exhausted his administrative remedies with respect to the condition of the A&B yards, the inaccessibility of certain water fountains, and the inaccessibility of certain telephones throughout Green Haven.  (See Defs.' Letter Dated Sept. 22, 2008, at 3-4.)  As explained above, however, Shariff need not have exhausted with respect to these conditions to have viable claims.
[12] Throughout this opinion, the term "condition" of the yards encompasses the accessibility of the yards as well as the existence of hazardous conditions like potholes, broken concrete, or ditches.

disposition that relieves Shariff of his obligation to appeal the grievance before bringing suit.

With respect to Shariff's claim regarding the height of the UPD food service counter, there is some indication in the record that this condition may have been the subject of a grievance filed by Shariff.  Specifically, during his deposition testimony, Shariff explicitly stated that he filed a grievance related to the height of the UPD counter.  (Shariff Dep. 22:13-14.)  Although Shariff also stated that the height of the UPD counter was not lowered in response, he acknowledged that Green Haven had attempted to remedy the situation by changing the way in which hot food is served from the counter, conceivably a "favorable disposition" of the grievance.  (Shariff Dep. 22:15-23:8.)  Given these statements, the Court finds that Defendants have not met their burden with respect to Shariff's claim regarding the height of the UPD counter.  There is also evidence that Shariff filed a grievance (GH 33093-95) that was resolved favorably with respect to the guardhouse/shack in the C&D yard.  (See Schwartz Decl. Ex. M.)  Accordingly, the Court finds that Shariff has a viable claim regarding this condition.  With respect to all other remaining conditions, however, there is no indication in the record that Shariff ever filed grievances addressing them.[13]  There is no record of these alleged

_____

[13] Indeed, with respect to the pavement in the "gate corridor," Plaintiffs

20

grievances in the copies of grievances produced by Plaintiffs (see Schwartz Decl. Ex. M.), there is no specific mention of these grievances in the Fourth Amended Complaint, the chart of grievances attached to the Complaint, or Shariff's affirmations[14] and deposition testimony, these grievances are not included in the list of alleged grievances Plaintiffs provided to the Court in their opposition brief (see Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, Addendum B), and these grievances are not mentioned in either Plaintiffs' current or former Rule 56.1 statements (see Defs.' Rule 56.1 Stmt. ¶ 21; Pls.' Rule 56.1 Stmt. ¶ 21; Meyerson Aff. Ex. E ¶¶ 152-187). Accordingly, given that there is no indication in the record that these grievances were actually filed — other than blanket assertions that "all of Shariff's claims are viable" (Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, at 58) or that Shariff grieved "virtually all" of the conditions at issue (Shariff Aff. ¶ 23, Dec. 26, 2005) — the

seem to concede that no notice was ever provided to Defendants. (See Fourth Am. Compl. Ex. A.)

[14] Shariff does, however, generically assert in his 1999 Affirmation — as Plaintiffs Stevens and Stephenson do in their 1999 Affirmations — that he "notified the Defendants'" and "filed grievances" regarding the condition of the A&B and C&D yards, the visiting-room yard, the visiting-room bathrooms, as well as (presumably the restrooms in) the gymnasium, auditorium, clinic, building-12, J-school area, administration corridor, Fay Field, and the church. (Shariff Aff. ¶ 5, Feb. 4, 1999.) Shariff also contends that he grieved the condition of bathrooms, water fountains, and telephones throughout the facility. (Shariff Aff. ¶ 5, Feb. 4, 1999.) The Court need not consider these statements, however, because, as explained above, Shariff retains claims regarding the condition of the A&B and C&D yards, the visiting-room yard, as well as the bathrooms, water fountains, and telephones throughout Green Haven.

Court finds that Defendants have met their burden on the issue of exhaustion.  Thus, the Court finds that Shariff has viable claims with respect to: (1) the conditions alleged in his original Complaint — the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains throughout the facility; (2) the functioning of the J-Block (school) elevator; (3) the condition of the C&D yards; (4) the height of the UPD counter; and (5) the guardhouse/shack in the C&D yards.  To the extent Shariff asserts claims related to any other conditions at Green Haven, those claims are DISMISSED.

### 2. Bartley

Defendants concede that Bartley has exhausted his administrative remedies with respect to the accessibility of the library and the functioning of the J-School elevator.  (Defs.' Mem. L. in Support of Defs.' Renewed Motion for Partial Summary Judgment App'x A, at 3; Defs.' Rule 56.1 Stmt. ¶ 22; Pls.' Rule 56.1 Stmt. ¶ 22.)  Plaintiffs assert that Bartley also filed grievances regarding the potholes and cracks in the yard areas, the booths in walkways preventing wheelchair access to sidewalks,[15] and the condition of the E&F yard.[16]  (See Pls.' Mem.

---

[15] The Court presumes this grievance refers to the presence of guard houses/shacks in the yard walkways.

[16] Plaintiffs also indicate that Bartley filed grievances regarding a number of conditions/issues that are not addressed by the Fourth Amended Complaint and thus are not part of this litigation, including: the accessibility of

22

L. in Opp'n to Defs.' Renewed Motion for Partial Summary

Judgment, Addendum B; Fourth Am. Compl. Ex. A.)  It is clear

that Bartley never made any appeals to CORC regarding these

conditions.  (See Bellamy Decl. Ex. A, at 5-6.)  It is unclear,

however, whether these grievances were resolved in Bartley's

favor at some point during the grievance process, thus

extinguishing his obligation to appeal to CORC to "properly

exhaust."  Accordingly, the Court finds that Defendants have not

met their burden with respect to these alleged grievances, and

Bartley has viable claims regarding (1) the condition of all the

Green Haven yards complained of in the Fourth Amended Complaint,

(2) the existence of booths in walkways preventing wheelchair

access to sidewalks in the yards, (3) the accessibility of the

law library, (4) the functioning of the J-School elevator, and

(5) the conditions alleged in Shariff's original Complaint.  All

other claims as to Bartley in the Fourth Amended Complaint are

DISMISSED.

### 3. Stephenson

Stephenson contends that he filed administrative grievances

related to: (1) his exposure to his own human waste; (2) the

accessibility of toilets in his work area and the A&B yards; (3)

---

certain windows; the accessibility of the commissary, the stateshop, and
certain showers (particularly in H-Block); the height of bulletin boards
throughout the facility; Bartley's placement in H-Block instead of the UPD;
and emergency call buttons in the bathrooms.  (See Fourth Am. Compl. Ex A;
Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment,
Addendum B.)

the condition of the A&B yards; (4) the condition of the C&D
yards; and (5) the lack of telephone accessibility in the
gymnasium.[17]   (See Fourth Am. Compl. ¶ 61, Ex A; Pls.' Mem. L. in
Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, at
56, Addendum B.)   The Court reads Stephenson's claim that he
filed a grievance related to his exposure to his own human waste
as a complaint regarding the inaccessibility of bathrooms
throughout Green Haven.   Given the Court's above findings
regarding exhaustion, Stephenson did not need to exhaust his
claims with respect to the restrooms throughout Green Haven, the
condition of the A&B yards, or the gym telephones because those
claims relate back to Shariff's original pro se complaint.   To
maintain a claim regarding the condition of the C&D yards,
however, Stephenson did need to exhaust his administrative
remedies.   Plaintiffs claim that Stephenson filed such a
grievance on August 26, 1996 and that it was assigned grievance
number 33093-96.[18]   (See Pls.' Mem. L. in Opp'n to Defs.' Renewed

---

[17] Stephenson also asserts he filed a grievance regarding the condition of the
Green Haven showers.   (See Defs.' Renewed Motion for Partial Summary
Judgment, Addendum B.)   The condition of the showers, however, is not
addressed in the Fourth Amended Complaint and thus is not part of this
litigation.   Additionally, in his 1999 Affirmation, Stephenson generically
asserted — as did Plaintiffs Shariff and Stevens in their 1999 Affirmations —
that he filed grievances with respect to the A&B yard, the visiting-room
yard, bathrooms in specific locations within Green Haven, as well as
bathrooms, water fountains, and telephones throughout the facility.
(Stephenson Aff. ¶ 5, Feb. 4, 1999.)   The Court need not address these
generic allegations, however, because these conditions are covered by
Shariff's initial Compliant.
[18] Plaintiffs list two different numbers for this grievance, 33093-95 is
listed in Addendum B to their Memorandum of Law in Opposition to Defendants'
Renewed Motion for Summary Judgment and 33093-96 is listed in Exhibit A to

24

Motion for Partial Summary Judgment, Addendum B; Fourth Am.
Compl. Ex. A.)  Defendants respond that because "this grievance
was purportedly filed eleven years ago, defendants are unable to
ascertain whether such a grievance was filed at Green Haven."
(Defs.' Reply Mem. L. in Support of Defs.' Renewed Motion for
Partial Summary Judgment, at 43 n.14.)  Although it is clear
that no such grievance filed by Stephenson was appealed to CORC[19]
(see Bellamy Decl. Ex. A, at 7), it is unclear whether this
alleged grievance ever needed to be appealed to CORC for "proper
exhaustion" — if Stephenson received a favorable disposition of
the grievance, no appeal was necessary.  Given Defendants'
inability to demonstrate that this grievance was never filed or
was filed and not appealed as necessary, the Court finds that
Defendants have not met their burden and Stephenson has a viable
claim regarding the condition of the C&D yards.  Additionally,
although not discussed by Plaintiffs, it appears that Stephenson
filed a grievance with respect to the accessibility of the
family reunion site, Fay Field.  (See Schwartz Reply Decl. Ex.

---

the Fourth Amended Complaint.  Because grievance 33093-95 was actually filed
by Plaintiff Shariff, not Plaintiff Stephenson, the Court presumes that
Plaintiffs allege grievance 33093-96 is the grievance at issue.  (See
Schwartz Decl. Ex. M.)

[19] CORC records reveal that Stephenson filed one appeal, GH-40182-98,
regarding the condition of the C&D yards.  GH-40182-98, however, was filed
with CORC on July 2, 1998, over two years after Stephenson joined the
litigation with the filing of the Amended Complaint and over a year and a
half after claims regarding the C&D yards were added to the litigation with
the filing of the Second Amended Complaint.  (See Bellamy Decl. Ex. A, at 7;
Second Am. Compl. ¶ 25.)  Thus, grievance GH-40182-98 cannot suffice to
satisfy the exhaustion requirement because Stephenson did not exhaust his
administrative remedies prior to the commencement of his suit.  See Neal v.
Goord, 267 F.3d 116, 117-118 (2d Cir. 2001).

F.)  This grievance received a favorable determination and thus appeal was not required for proper exhaustion.  (See Schwartz Reply Decl. at Ex. F.)  Defendants argue, however, that this grievance does not provide Stephenson with a basis for a viable claim because the grievance was filed in November of 1996, over four months after Stephenson joined the case.  (Defs.' Letter Dated Sept. 22, 2008, at 5.)  Although it is true that the grievance was filed after Stephenson joined the case, it was filed before any claims regarding Fay Field were asserted.  The condition of Fay Field only became part of this action with the filing of the Second Amended Complaint on December 12, 1996, after Stephenson's grievance regarding Fay Field was filed and resolved.  (See Schwartz Reply Decl. Ex. F; Second Am. Compl. ¶ 38.)  Accordingly, the Court finds that Stephenson has viable claims with respect to the condition of the C&D yards, the condition of Fay Field, and the conditions alleged in Shariff's original Complaint — the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains throughout Green Haven.  To the extent Stephenson asserts claims related to any other conditions at Green Haven, those claims are DISMISSED.

#### 4. Gobern

Defendants have demonstrated that Gobern appealed only two grievances to CORC — one related to the installation of an

26

emergency call button, and the other related to the use of a van for medical trips.  (See Bellamy Decl. Ex. A, at 8.)  Neither of these grievances appears relevant to the claims stated in the Fourth Amended Complaint.[20]  Plaintiffs allege that Gobern filed additional grievances relevant to this action — several related to bathroom accessibility and one regarding the "west side yard."[21]  (See Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, Addendum B; Fourth Am. Compl. ¶¶ 34, 55.)  Because Shariff's initial Complaint covers the accessibility of bathrooms throughout Green Haven, the Court need not address whether Gobern exhausted his administrative remedies with respect to these alleged grievances.  With respect to the "west side yard" grievance, it is unclear to the Court what particular condition in the west side yard Gobern asserts he grieved.  Additionally, Plaintiffs indicate that Gobern's grievance was denied (because Gobern was no longer in DOCS custody), and Defendants have demonstrated that it was never appealed to CORC.  (See Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, Addendum B; Bellamy Decl.

---

[20] It appears that the "emergency call button" grievance addresses the presence of emergency call buttons in the Green Haven bathrooms.  (See Meyerson Aff. Ex. E ¶¶ 256-258.)  Although the Fourth Amended Complaint addresses the accessibility of restrooms, it does not discuss the emergency call button issue.  Accordingly, the Court finds that this issue is not part of the litigation.
[21] In his deposition testimony Gobern also stated that he field a grievance about a "patch in the hallway, a steep incline."  (Gobern Dep. 34:7-12.)  The Court has no further details about this alleged condition and finds that it is not part of the litigation given that the Fourth Amended Complaint does not mention patches in hallways or steep inclines.

27

Ex. A, at 8.)  Accordingly, the Court finds that Defendants have sufficiently demonstrated that Gobern has not exhausted his administrative remedies with respect to any of the claims asserted in the Fourth Amended Complaint.  Thus, Gobern has viable claims only with respect to the conditions alleged in Shariff's original Complaint — the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains; all other claims asserted by Gobern are DISMISSED.

### 5. Purcell

Defendants have demonstrated that Purcell did not appeal any grievances to CORC that are relevant to this action.  (See Bellamy Decl. Ex. A, at 9.)  Additionally, Plaintiffs essentially concede that Purcell did not file any grievances with respect to the condition of Fay Field, the height of the UPD counter, and various bathrooms.  (See Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, at 57; see also Defs.' Rule 56.1 Stmt. ¶ 17; Pls.' Rule 56.1 Stmt. ¶ 17.)  Indeed, the only grievance Plaintiffs contend Purcell filed is one related to access to water fountains in Building 12, a claim that is already covered by Shariff's initial Complaint.  (See Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, Addendum B; Fourth Am. Compl. ¶ 60, Ex. A.)  Accordingly, the Court finds that Purcell has

viable claims with respect to the conditions alleged in Shariff's original Complaint — the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains; all other claims asserted by Purcell are DISMISSED.

### 6. Stevens

Defendants concede that Stevens has exhausted his administrative remedies with respect to his claim regarding the condition of the C&D yards.[22] (Defs.' Rule 56.1 Stmt. ¶ 24; Pls.' Rule 56.1 Stmt. ¶ 24.) Plaintiffs assert that Stevens also filed grievances addressing the accessibility of bathrooms throughout Green Haven.[23] (See Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, Addendum B;

---

[22] Defendants also concede that Stevens has exhausted with respect to his claims regarding the condition of the A&B yards and the gym bathroom. (Defs.' Rule 56.1 Stmt. ¶ 24; Pls.' Rule 56.1 Stmt. ¶ 24.) As explained above, however, Stevens need not have exhausted with respect to these conditions to retain viable claims. Defendants further admit that Stevens exhausted his remedies with respect to a claim described as "repair walkway/wheelchair," which was appealed to CORC and disposed of on 3/15/95. (Defs.' Letter Dated Sept. 22, 2008, at 4.) Based on CORC records, it appears to the Court that this is grievance number GH-31187-94, a copy of which is included in Exhibit M to the Declaration of John M. Schwarz. (See Bellamy Decl. at 10.) A review of this grievance reveals that it concerned the potholes and broken concrete in the A&B and C&D yards. (Schwartz Decl. Ex. M.)

[23] Plaintiffs' additional assertions that Stevens filed a grievance regarding officer B. Mitchell's conduct with respect to the J-School bathroom and the fact that he was denied the right to participate in the family reunion program by Dr. Manion are not issues contained in the Fourth Amended Complaint and thus not relevant to this litigation. (See Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, Addendum B.) Furthermore, in his 1999 Affidavit, Stevens — like Plaintiffs Shariff and Stephenson — generically asserted that he grieved the condition of the A&B and visiting-room yards, certain bathrooms within Green Haven, and the accessibility of bathrooms, telephones, and water fountains throughout Green Haven. (Stevens Aff. ¶ 5, Feb. 4, 1999.) These claims, however, are either addressed above or covered by Shariff's initial Complaint.

Meyerson Aff. Ex. E ¶¶ 188-207; Schwartz Decl. Ex. M.)   Given

that Shariff's initial Complaint includes the condition of

bathrooms throughout Green Haven, the Court need not address

whether Stevens exhausted his administrative remedies with

respect to these alleged grievances.   Accordingly, the Court

finds that Stevens has viable claims with respect to the

condition of the C&D yards as well as the conditions alleged in

Shariff's original Complaint; all other claims asserted by

Stevens are DISMISSED.

### 7. Suluk

Suluk has viable claims with respect to the conditions

alleged in Shariff's original Complaint.   Plaintiffs

additionally assert that Suluk filed a grievance (grievance

number 33053-95) on August 1, 1995 regarding the installation of

an apron around the Green Haven yards.[24]   (See Pls.' Mem. L. in

Opp'n to Defs.' Renewed Motion for Partial Summary Judgment,

Addendum B.)   The Court interprets the content of this grievance

to be one addressing the condition/accessibility of the facility

yards.   No copy of this purported grievance was produced during

discovery, and there is no record that Suluk appealed this

grievance to CORC.   (See Schwartz Decl. Ex. M; Bellamy Decl. Ex.

---

[24] Plaintiffs also assert that Suluk filed grievances with respect to the
accessibility of several Green Haven bathrooms.   (See Pls.' Mem. L. in Opp'n
to Defs.' Renewed Motion for Partial Summary Judgment, Addendum B.)   The
Court need not address this contention, however, because those claims are
encompassed by Shariff's initial Complaint.

A, at 12.)  Plaintiffs contend, however, that Green Haven

informed Suluk that repairs would be made with respect to his

claim "as soon as other projects that are in progress are

completed", arguably a favorable determination of the grievance.

(Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial

Summary Judgment, Addendum B.)  Thus, Suluk did not need to

appeal the disposition of this grievance in order to properly

exhaust.  Because Defendants have not demonstrated that this

grievance was never filed or that Suluk was required to appeal

its disposition to CORC, the Court finds that Suluk has viable

claims regarding the condition of all of the yards at issue in

the Fourth Amended Complaint as well as the conditions set forth

in Shariff's initial Complaint.  All other claims asserted by

Suluk are DISMISSED.

### 8. Gowins

Defendants have demonstrated that Gowins did not appeal any

grievances to CORC that are relevant to this action.  (See

Bellamy Decl. Ex. A, at 11.)  Additionally, Plaintiffs

essentially concede that Gowins did not file any grievances with

respect to the condition of Fay Field, the height of the UPD

counter, and various bathrooms.  (See Pls.' Mem. L. in Opp'n to

Defs.' Renewed Motion for Partial Summary Judgment, at 57.)

Plaintiffs assert, however, that Gowins filed a number of

grievances concerning the accessibility of Green Haven

31

bathrooms.[25]   (See Fourth Am. Compl. Ex. A; Meyerson Aff. Ex. E ¶ 239-242.)   Given that Shariff's initial Complaint addresses the condition of bathrooms throughout Green Haven, the Court need not address whether Gowins exhausted these grievances. Furthermore, in his deposition testimony, Gowins asserted that he filed a grievance regarding the C&D yards.   (Gowins Dep. 23:21-24:1.)   Although not appealed to CORC, there is no indication that this grievance was not resolved in Gowins's favor.   Accordingly, the Court finds that Gowins has viable claims with respect to the condition of the C& D yards as well as the conditions alleged in Shariff's original Complaint — the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains; all other claims asserted by Gowins are DISMISSED.

### C. Summary of Claims

In summary, the following claims remain part of this action with respect to each Plaintiff.   All Plaintiffs have claims regarding the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains throughout Green Haven.   Additionally, Shariff has claims pertaining to the functioning of the J-Block (school) elevator, the condition of the C&D yards, the height of the UPD

---

[25] Plaintiffs also assert that Gowins filed a grievance regarding wheelchair inaccessible tables in the J-School area.   (See Meyerson Aff. Ex. E ¶ 238.) The tables in the J-School area, however, are not mentioned in the Fourth Amended Complaint and, thus, are not part of this action.

counter, and the guardhouse/shack in the C&D yards.  Bartley has

claims regarding the condition of all the Green Haven yards

complained of in the Fourth Amended Complaint, the existence of

booths in walkways preventing wheelchair access to sidewalks in

the yards, the accessibility of the law library, and the

functioning of the J-School elevator.  Stephenson has claims

regarding the condition of the C&D yards and the condition of

Fay Field.  Stevens and Gowins have viable claims with respect

to the condition of the C&D yards.  Suluk has viable claims

regarding the condition of all the Green Haven yards at issue in

the Fourth Amended Complaint.  Plaintiffs Gobern and Purcell

have no additional claims beyond those asserted by Shariff in

his original filing.

II. Claims for Injunctive Relief

A. Shariff and Gowins

In its Order of June 20, 2002, the Court dismissed all

claims for injunctive relief asserted by Plaintiffs Bartley,

Gobern, Johnson, Purcell, Stevens, and Suluk.  The Court

dismissed these claims because these Plaintiffs are no longer

incarcerated at Green Haven and "[i]t is settled in this Circuit

that a transfer from a prison facility moots an action for

injunctive relief against the transferring facility."  Prins v.

Coughlin, 76 F.3d 504, 506 (2d Cir. 1996).  Since June 20, 2002,

Plaintiffs Gowins and Shariff have also left Green Haven.

33

(Defs.' Rule 56.1 Stmt. ¶¶ 2, 3; Pls.' Rule 56.1 Stmt. ¶¶ 2, 3.)
Although Plaintiffs do not argue that Gowins's claims for
injunctive relief are viable despite the fact that he is no
longer at Green Haven, they do make such an argument with
respect to Shariff's claims.  Specifically, Plaintiffs argue
that Shariff's claims for injunctive relief should not be
dismissed because (1) he was transferred from Green Haven in
retaliation for voicing objections to prison conditions and (2)
it is likely that he will be transferred back to the facility.
(Pls.' Mem. L. in Opp'n to Defs.' Renewed Motion for Partial
Summary Judgment, at 63.)  The Court disagrees.

Although Shariff may separately pursue a claim for
retaliation, the Court is aware of no authority that supports
Plaintiffs' contention that an allegation of retaliatory motive
is sufficient to resurrect his claims for injunctive relief.
See, e.g., Bennett v. Goord, 343 F.3d 133 (2d Cir. 2003).
Similarly, Plaintiffs' speculations that Shariff may be returned
to Green Haven do not suffice to rescue his claims.[26]  See
Armstrong v. Ward, 529 F.2d 1132, 1136 (2d Cir. 1976) (stating
that "while there is always the possibility . . . that the State
will change its mind [and return an inmate to the facility his
claims are directed towards], 'such speculative contingencies

---

[26] The fact that Shariff was transferred away from Green Haven in 2003 and,
after approximately six years, has not been transferred back evidences that
Plaintiffs' assertions that Shariff will be returned to Green Haven are
purely speculative. (Shariff Aff. ¶ 6.)

afford no basis for our passing on the substantive issues'");
Courts v. Coombe, No. 95 Civ. 2350 (DC), 1996 WL 312357, at *2
(S.D.N.Y. June 11, 1996) (holding that "[t]he mere possibility
that [the Plaintiff] may be returned to [the prison against
which he filed suit] at some point in the future does not
present a sufficient case or controversy that the Court can
presently adjudicate"). Accordingly, the Court finds that
Gowins's and Shariff's claims for injunctive relief are moot;
they are, therefore, DISMISSED.

### B. Stephenson

All parties agree that Plaintiff Stephenson is the only
Plaintiff who is currently incarcerated at Green Haven. (Defs.'
Rule 56.1 Stmt. ¶ 3; Pls.' Rule 56.1 Stmt. ¶ 3.) Despite
Stephenson's continued presence at the facility, Defendants
argue that his claims for injunctive relief should be dismissed
due to a failure to exhaust administrative remedies. The Court
disagrees. As is discussed above, despite the PLRA's exhaustion
requirement, Stephenson has viable claims with respect to the
condition of the C&D yards, the condition of Fay Field, and the
conditions alleged in Shariff's original Complaint — the
condition of the A&B yards, the visiting-room yard, and the
accessibility of bathrooms, telephones, and water fountains
throughout Green Haven. Accordingly, Stephenson is entitled to
seek injunctive relief with respect to these claims.

Defendants' Motion for Summary Judgment on this issue is,
therefore, DENIED.

### C. Present Conditions at Green Haven

Some of the conditions for which Stephenson retains viable
claims for injunctive relief have, however, been repaired since
the commencement of this litigation.  Stephenson's claims for
injunctive relief with respect to these conditions must be
dismissed as moot.

It appears to the Court that there is no longer any dispute
that accessibility issues regarding the telephones and water
fountains throughout the facility, as well as the accessibility
of the C&D yard, have been addressed.  Defendants have set forth
evidence that: (1) several handicap accessible telephones have
been installed in different locations around Green Haven; (2)
six wheelchair accessible water fountains have been installed in
various areas of Green Haven, and that Green Haven has
instituted a policy that any inmate confined to a wheelchair may
carry a cup to use at any water fountain; and (3) the walkways
in the C&D yard have been repaired and widened to allow passage
around the officer's station.  (Richards Aff. ¶¶ 10, 15, Ex. B.
¶¶ 9, 50-51, 58, 64, 71, 77, 81, 93, 99, Jan. 19, 1999.)
Plaintiffs have given the Court no reason to believe that these
alleged renovations have not occurred or are insufficient to
meet Plaintiffs' accessibility needs.  Indeed, neither in their

36

brief opposing summary judgment, nor in their letter to the
Court dated October 6, 2008, nor in their Rule 56.1 Statement do
Plaintiffs mention that the accessibility of telephones, water
fountains, and the C&D yard remain at issue.  (See Pls.' Mem. L.
in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment,
at 64-66; Pls.' Letter Dated Oct. 6, 2008, at 11; Defs.' Rule
56.1 Stmt. ¶ 28; Pls.' Rule 56.1 Stmt. ¶ 28.)  Accordingly,
Stephenson's claims for injunctive relief with respect to these
conditions are DISMISSED.

It also is clear that injunctive relief is no longer
appropriate with respect to the accessibility of the auditorium
bathrooms.  Defendants have submitted evidence — that Plaintiffs
do not appear to dispute — that Green Haven installed a
wheelchair lift from the floor to the auditorium stage, added
ramps at the rear of the stage to provide access to a bathroom
and dressing room, and constructed two fully accessible unisex
toilets, one for the stage area and one for the audience area.
(Richards Supplemental Decl., at 5.)  Accordingly, any claim for
injunctive relief regarding the accessibility of the auditorium
bathrooms is DISMISSED.

With respect to all other conditions relevant to
Stephenson, the Court is unable to determine if injunctive
relief is still appropriate based on the current record.  In
particular, which restrooms within Green Haven are now

37

accessible and whether Fay Field is or should be made accessible appear to be issues about which Plaintiffs and Defendants have vastly different views.  (See Defs.' Rule 56.1 Stmt. ¶ 28; Pls.' Rule 56.1 Stmt. ¶ 28; Pls.' Letter Dated Oct. 6, 2008, at 11.) Additionally, the Court does not have a clear picture of whether the visiting-room yard has been made wheelchair accessible. Accordingly, the Court finds it inappropriate to dismiss any additional claims for injunctive relief at this time.  Should it become clear to the Court at a later point in this litigation that some of the conditions for which Stephenson retains claims for injunctive relief have been addressed by Green Haven, those conditions will be dismissed from the litigation.

### D. Summary

In summary, the only Plaintiff eligible to seek injunctive relief is Stephenson.  In light of the Court's exhaustion analysis, Stephenson's remaining claims address the condition of the C&D yards, the condition of Fay Field, and the conditions alleged in Shariff's original Complaint — the condition of the A&B yards, the visiting-room yard, and the accessibility of bathrooms, telephones, and water fountains throughout Green Haven.  However, the Court has determined that the condition of the A&B and C&D yards, the accessibility of telephones and water fountains throughout the facility, and the accessibility of the auditorium restrooms are no longer appropriate for injunctive

38

relief.  Accordingly, the only remaining claims for injunctive

relief in this action are Stephenson's claims regarding: (1) the

condition of Fay Field; (2) the condition of the visiting-room

yard; and (3) the accessibility of bathrooms (with the exception

of the auditorium bathrooms) throughout Green Haven.[27]

### III. 42 U.S.C. § 1983

In its Order dated June 20, 2002, the Court dismissed

Plaintiffs' claims for monetary relief pursuant to 42 U.S.C. §

1983 against the State of New York and the other six defendants

in their official capacities.  Defendants now argue that all of

Plaintiffs' remaining claims pursuant § 1983 — under the Eighth,

Fourteenth, and First Amendments — against the individual

defendants in their personal capacities must be dismissed

because those claims do not rise to the level of constitutional

violations.  While the Court finds that most of Plaintiffs' §

1983 claims cannot withstand summary judgment, the Court

declines presently to dismiss all of Plaintiffs' § 1983 claims.

### A.  The Eighth Amendment

The conditions of a prisoner's confinement can give rise to

a violation of the Eighth Amendment's prohibition on cruel and

---

[27] Plaintiffs' reliance on the Declaratory Judgment Act, 28 U.S.C. §§ 2201-
2202, as "an additional source of relief" is misplaced.  (Pls.' Letter Dated
Oct. 6, 2008, at 12.)  The Declaratory Judgment Act cannot resurrect
substantive claims that are defeated by jurisdictional, exhaustion, mootness,
or other defenses.  See, e.g., Golden v. Zwickler, 394 U.S. 103, 110 (1969)
(denying a request for a declaratory judgment where an immediate, live
controversy did not exist between parties having adverse legal interests at
the time of the hearing).

39

unusual punishment.  See Phelps v. Kapnolas, 308 F.3d 180, 185

(2d Cir. 2002).  In such "conditions of confinement" cases, "a

prisoner may prevail only where he proves both an objective

element — that the prison officials' transgression was

'sufficiently serious' — and a subjective element — that the

officials acted, or omitted to act, with a 'sufficiently

culpable state of mind,' i.e., with 'deliberate indifference to

inmate health or safety.'"  Id. (quoting Farmer v. Brennan, 511

U.S. 825, 834 (1994)).  With respect to the "objective" element,

prisoners may not be denied "the minimal civilized measure of

life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347

(1981).  States must not deprive prisoners of their "basic human

needs — e.g., food, clothing, shelter, medical care, and

reasonable safety," and prison officials may not expose inmates

to conditions that "pose an unreasonable risk of serious damage

to [their] future health."  Phelps, 308 F.3d at 185 (quoting

Helling v. McKinney, 509 U.S. 25, 32, 35 (1993)) (internal

quotation marks omitted).  In terms of the subjective component,

"the Supreme Court has explained that 'a prison official cannot

be found liable under the Eighth Amendment for denying an inmate

humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference.'"  Id. at 185-86 (quoting

Farmer, 511 U.S. at 837).  "This 'deliberate indifference'

element is equivalent to the familiar standard of 'recklessness'

as used in criminal law."  Id. at 186.

In this case, the following conditions remain part of the

litigation subsequent to the Court's exhaustion analysis: (1)

the inaccessibility of water fountains throughout Green Haven;

(2) the inaccessibility of telephones throughout Green Haven;

(3) the inaccessibility of bathrooms throughout Green Haven; (4)

the condition and accessibility[28] of all prison yards mentioned

in the Fourth Amended Complaint; (5) the accessibility of Fay

Field; (6) the accessibility of the law library; (7) the height

of the UPD food service counter; and (8) the functioning of the

J-Block (school) elevator.  For the reasons set forth below, the

Court finds that with the exception of the accessibility of

Green Haven's bathrooms, none of these conditions give rise to

an Eighth Amendment violation because none satisfy the

"objective element" of the Eighth Amendment test — that the

conditions denied Plaintiffs "the minimal civilized measure of

life's necessities" or "pose an unreasonable risk of serious

damage" to their future health.

## 1. The Green Haven Restrooms

[28] Including the existence of guardhouses/shacks/booths impeding access to and
within the yards.

41

In their Fourth Amended Complaint, Plaintiffs allege that the inaccessibility of Green Haven's common restrooms[29] has caused them harm and detail three specific instances in which they have been injured as a result of the condition of these restrooms:  (1) on March 30, 1996 Plaintiff Gobern defecated on himself while in the gymnasium because the gymnasium restroom is not wheelchair accessible; (2) Plaintiff Gowins fell while attempting to use an inaccessible bathroom in the J-School area; and (3) Plaintiff Stevens "suffered injuries" because of the lack of accessibility of the gymnasium area bathroom.  (Fourth Am. Compl. ¶¶ 53, 54, 72.)  In his deposition testimony, Plaintiff Gowins provided further detail regarding his fall in the J-School bathroom, explaining that he "got stuck in-between the radiator and the toilet trying to use it" and "had to stay and wait for somebody to come in and ask him — when the inmate came in, a prisoner, he notified the officers . . . and they had to dress [him] because [he] busted his head."  (Gowins Dep. 10:2-7.)  Gowins also described another incident in which he spent two days locked in his cell with soiled clothes after failing to reach an accessible restroom in time.  (Gowins Dep. 12:14-13:2.)  Similarly, during their deposition testimony Plaintiffs Shariff, Stephenson, Gobern, and Suluk, explained that as a result of inaccessible restrooms within Green Haven's

---

[29] There is no dispute that the restrooms within Plaintiffs' housing unit, the UPD, are wheelchair accessible.

common areas they regularly urinated or defecated on themselves
because they were not escorted quickly enough back to the
accessible toilets in the Unit for the Physically Disabled or
because they were denied the ability to return to the UPD.  (See
Shariff Dep. 6:12-7:12; Stephenson Dep. 10:13-20; Gobern Dep.
14:17-15:6; Suluk Dep. 7:24-8:12).  Although Plaintiffs'
estimates of how frequently such incidents occurred vary, the
record is clear that at least some Plaintiffs suffered such an
episode up to several times per week.  (See, e.g., Shariff Dep.
6:12-7:12; Stephenson Dep. 10:10-25; Stevens Dep. 17:12-25;
Suluk Dep. 13:17-14:4; Gowins Dep. 16:6-11.)

Although Defendants assert that the restroom accessibility
issues throughout Green Haven do not rise to the level of an
Eighth Amendment violation, the Court cannot agree.  In support
of their argument, Defendants cite to cases within this Circuit
holding that that the temporary deprivation of the ability to
use restroom facilities does not constitute a violation of the
Eighth Amendment.  The cases cited by Defendants, however, are
inapposite.  In those cases, inmates were merely denied the
ability to use a restroom for a period of several hours on a
one-time or infrequent basis.  See Whitted v. Lazerson, No. 96
Civ. 2746 (AGS), 1998 U.S. Dist. LEXIS 7437, at *7 (S.D.N.Y. May
21, 1998) (holding that an inmate's Eighth Amendment rights were
not violated when he was occasionally prevented from using the

43

restroom and thus urinated or defecated on his clothing); Odom v. Keane, No. 95 Civ. 9941 (SS), 1997 U.S. Dist. LEXIS 14077, at *4-5 (S.D.N.Y. Sept. 15, 1997) (finding that the absence of a working toilet in an inmate's cell for several hours, "does not rise to the level of cruel and unusual punishment"); Rogers v. Laird, No. 07-CV-668 (LEK/RFT), 2008 U.S. Dist. LEXIS 20317, at *9-10 (N.D.N.Y. Feb. 8, 2008) (noting that "[t]he temporary deprivation of restroom privileges for a three hour period does not constitute an extreme deprivation of life's necessities"). In this case, however, Plaintiffs have testified that they soil themselves up to several times per week.  The sheer frequency with which these incidents occur — not to mention the physical injuries that at least some Plaintiffs have suffered in attempting to use an inaccessible restroom — indicates that Plaintiffs have been denied "the minimal civilized measure of life's necessities" in violation of the Eighth Amendment.

With respect to the subjective prong of the Eighth Amendment test, the Court finds that Plaintiffs have at least raised a disputable issue of fact as to whether Defendants were deliberately indifferent to Plaintiffs' restroom needs. Although it is clear that Defendants made improvements to Green Haven's bathroom facilities over time, the sheer frequency with which these soiling incidents seem to have occurred perhaps indicates that Defendants should have taken greater action or

moved more quickly to address Plaintiffs' needs.  The Court

simply cannot assess whether Defendants acted with sufficient

urgency on the current record.  Additionally, given the number

of grievances Plaintiffs appear to have filed regarding the

condition of restroom facilities, the Court finds that there is

a disputed issue of fact as to whether the Defendants were aware

of Plaintiffs' difficulties.  Accordingly, because the Court

finds that there are disputed issues of fact with respect to the

subjective prong of the test, Defendants' request for summary

judgment is DENIED.[30]

## 2. The Accessibility of Water Fountains & The Height of the UPD

## Food Service Counter

The height of the UPD food service counter and the absence

of accessible water fountains throughout Green Haven are not

conditions that deprive Plaintiffs of "the minimal civilized

measure of life's necessities" or "pose an unreasonable risk of

serious damage" to their future health.  Although Plaintiff

Shariff alleges that he was injured — in the form of a burn on

---

[30] The Court need not examine whether Plaintiffs have met the PLRA's injury
requirement, 42 U.S.C. § 1997e(e), with respect to this claim because, as
discussed above in the Court's exhaustion analysis, Shariff asserted claims
regarding the accessibility of restroom facilities throughout Green Haven
before the enactment of the PLRA and all of Plaintiffs' claims regarding the
accessibility of Green Haven's bathrooms relate back to the date on which
Shariff filed his original Complaint.  Just as the PLRA's "exhaustion
requirement" does not apply retroactively, courts have found that the
"physical injury requirement" does not so apply.  See Bolton v. Goord, 992 F.
Supp. 604, 625 (S.D.N.Y. 1998).  Thus, with respect to the accessibility of
Green Haven's restrooms, no Plaintiff need meet the PLRA's physical injury
requirement in order to recover damages.

his hand — by food or liquid falling from the food service counter, the Court simply cannot find that falling or spilled food creates an <u>unreasonable</u> risk of <u>serious</u> damage to Plaintiffs' health.  (<u>See</u> Shariff Dep. 21:3-22:7.)  Similarly, although Plaintiff Purcell alleges that as a result of the lack of accessible water fountains he was, at times, unable to take his heart medication, such a temporary deprivation of access to a water fountain does not amount to a deprivation of "the minimal civilized measure of life's necessities."  During his deposition testimony, Plaintiff Purcell was unable to identify any specific physical injury other than stress — and an accompanying dry mouth, increased heart beat, and feeling of faintness — that occasionally resulted from his inability to access the water fountains throughout Green Haven.  (<u>See</u> Purcell Dep. 9:17-11:5.)  Accordingly, to the extent Plaintiffs assert an Eighth Amendment claim based on the height of the UPD counter and the accessibility of Green Haven's water fountains, those claims are DISMISSSED.

### 3. The Green Haven Yards

The Court also finds that the condition of the Green Haven yards — including the existence of potholes, broken concrete, guardhouses or other conditions that create accessibility issues — does not constitute a violation of the Eighth Amendment. Although Plaintiffs allege — both in their Fourth Amended

Complaint and in their deposition testimony — that they have fallen and suffered injuries as a result of the presence of potholes and broken concrete in the yards,[31] a potholed yard falls short of the type of condition that is proscribed by the Eighth Amendment.  Just as courts have found that wet or slippery floors or a prison's failure to equip showers with non-slip mats are not the types of conditions warranting relief under the Eighth Amendment, it appears to the Court that a potholed recreation yard similarly does not run afoul of the Constitution.  See, e.g., Adams v. Perez, No. 08 Civ. 4834 (BSJ)(MHD), 2009 WL 513036, at *3 (Feb. 27, 2009) (stating that courts have repeatedly held that "a failure on the part of prison officials to provide shower mats does not rise to the level of a constitutional violation"); Sylla v. City of New York, No. 04-cv-5692 (ILG), 2005 WL 3336460, at *3 (E.D.N.Y. Dec. 8, 2005) (explaining that "[c]ourts have regularly held that a wet or slippery floor does not pose an objectively excessive risk to prisoners); Williams v. Dillon, No. 93-3127-

---

[31] Specifically, Plaintiffs assert that: (1) on June 30, 1994 Plaintiff Shariff flipped backward in his wheelchair and was injured as a result of the presence of a ditch in the Green Haven visiting-room yard; (2) on October 22, 1994, Plaintiff Shariff fell from his wheelchair due to a pothole in the A&B yard; (3) on December 27, 1994, the pavement in the "gate corridor" of Green Haven collapsed, causing Shariff to suffer injuries; (4) in May of 1996 Plaintiff Bartley fell from his wheelchair and suffered injury due to a pothole in the F&G yards; (5) Plaintiff Stevens suffered injuries because of potholes in the A&B yards on October 28, 1994; (6) Plaintiff Suluk suffered injuries because of conditions in the A&B yards; and (7) Plaintiff Stephenson suffered injuries as a result of a fall in August of 1996 in the C&D yards. (Fourth Am. Compl. ¶¶ 47, 49, 50, 62, 70, 74, 76.)

47

DES, 1993 WL 455442, at *1 (D. Kan. Oct. 28, 1993) (observing

that "[e]ven if the absence of a shower mat contributed to

plaintiff's fall, it would still fail to evidence the kind of

condition proscribed under the eighth amendment").   Indeed,

Plaintiffs have presented no case law — and the Court has

independently uncovered none — indicating that subjecting

inmates to a potholed prison yard contravenes the Eighth

Amendment.   Accordingly, Plaintiffs' Eighth Amendment claims

based on the condition of the Green Haven yards must be

DISMISSED.

### 4. Remaining Conditions

All remaining conditions — the inaccessibility of

telephones throughout Green Haven, the accessibility of Fay

Field, the accessibility of the law library, and the functioning

of the J-Block (school) elevator — are not the kind of

deprivations that have denied Plaintiffs a basic human need.

Nor have Plaintiffs alleged that these conditions have caused

any physical harm or pain.   Accordingly, the Court cannot find

that these conditions contravene the Eighth Amendment and any

such claims by Plaintiffs are DISMISSED.

### 5. Summary

In summary, Defendants' request for summary judgment on

Plaintiffs' Eighth Amendment claims is GRANTED with respect to

all conditions at Green Haven except the existence of accessible

restrooms.  With respect to Plaintiffs' Eighth Amendment claim

regarding the accessibility of restrooms throughout Green Haven,

Defendants' request for summary judgment is DENIED.  Accordingly

all of Plaintiffs' claims pursuant to 42 U.S.C. § 1983 based on

the Eighth Amendment are DISMISSED except for Plaintiffs' claim

regarding the accessibility of Green Haven's restrooms.

### B. The Fourteenth Amendment

Defendants maintain that to the extent Plaintiffs have

asserted claims under the Due Process and Equal Protection

clauses of the Fourteenth Amendment, those claims must be

dismissed.  The Court agrees.

Plaintiffs first argue that their conditions of confinement

are disproportionately harsh and thus amount to a violation of

the Due Process Clause of the Fourteenth Amendment.  In support

of this argument, Plaintiffs cite to the Supreme Court's

decision in Wilkinson v. Austin, 545 U.S. 209, 224 (2005), which

affirmed that inmates may have a liberty interest in not being

subjected to "atypical and significant hardship" in relation to

the ordinary incidents of prison life.  Applying this principle,

the Court held that inmates have a "protected liberty interest

in avoiding assignment" to Ohio's "supermax" prison facility,

and thus must be provided with appropriate process before being

placed there.  Id. at 220.  Before reaching its decision, the

Court described the conditions at issue within Ohio's supermax

facility as follows: "almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room." Id. at 223-24. The Court further observed that an inmate's placement at the OSP is "indefinite," is "reviewed just annually," and disqualifies an otherwise eligible inmate for parole consideration. Id. at 224. Though the Court acknowledged that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id.

Unlike the conditions at issue in Wilkinson, the conditions at issue in this case — broken concrete, some inaccessible bathrooms, telephones and water fountains, a food service counter that is too high, and the fact that there are obstacles to accessing certain areas of the facility — do not impose the requisite level of atypical and significant hardship necessary to give rise to a protected liberty interest. Accordingly, Plaintiffs' claim pursuant to the Due Process Clause is without merit and hereby DISMISSED.

Plaintiffs next assert that their conditions of confinement violate the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that no state shall "deny

to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). A plaintiff also must demonstrate that any disparity in treatment cannot withstand the appropriate level of scrutiny. Because the disabled are not a suspect or quasi-suspect class, rational basis scrutiny — that the disparity be rationally related to a legitimate governmental purpose — is the appropriate level of review in such cases. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 442, 446 (1985); Phillips, 408 F.3d at 129 (stating that in the prison setting, a Plaintiff must demonstrate that "his treatment was not 'reasonably related to [any] legitimate penological interests").

In this case, no differential treatment has been imposed upon Plaintiffs; instead, Plaintiffs complain that the physical plant of Green Haven has not been sufficiently altered to accommodate their needs. The Supreme Court has made clear, however, that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. . . . If special accommodations for the disabled are to be required,

51

they have to come from positive law and not through the Equal

Protection Clause." <u>Bd. of Trustees of the Univ. of Alabama v.</u>

<u>Garrett</u>, 531 U.S. 356, 367-68 (2001) (discussing <u>Cleburne</u>).

Accordingly, although Plaintiffs' claims regarding accessibility

issues at Green Haven may be viable under the ADA or

Rehabilitation Act, they do not fall within the ambit of the

Equal Protection Clause.  Therefore, the Court finds Plaintiffs'

claim pursuant to the Equal Protection Clause to be without

merit; it is DISMISSED.

In summary, Defendants' request for summary judgment on

Plaintiffs' Fourteenth Amendment claims is GRANTED and

Plaintiffs' claims pursuant to 42 U.S.C. § 1983 based on the

Fourteenth Amendment are DISMISSED.

### C. First Amendment Claims

In addition to violations of the Eighth and Fourteenth

Amendments, Plaintiffs' Fourth Amended Complaint alleges that

Defendants' actions have violated the First Amendment.  The

Complaint fails, however, to provide any additional detail

regarding alleged actions by Defendants that have infringed on

Plaintiffs' First Amendment rights.  Not surprisingly,

Defendants' Memorandum of Law in Support of Their Renewed Motion

for Partial Summary Judgment does not raise any arguments

related to the First Amendment in its section addressing

Plaintiffs' § 1983 claims.  Plaintiffs' Memorandum of Law in

52

Opposition to Defendants' Renewed Motion for Partial Summary
Judgment, however, again asserts that Plaintiffs have stated
claims under the First Amendment, though Plaintiffs again fail
to set forth with any precision what conduct by Defendants they
allege has violated their First Amendment rights and cite to no
evidence in the record to support their claim.  (Pls.' Mem. L.
in Opp'n to Defs.' Renewed Motion for Partial Summary Judgment,
at 29, 31, 34-35.)  In their Reply, Defendants presume that the
basis for Plaintiffs' First Amendment claim is the alleged
difficulties at least some Plaintiffs have encountered using
Green Haven's restroom facilities when attending religious
services. (Defs.' Reply Mem. L. in Support of Defs.' Renewed
Motion for Partial Summary Judgment, at 25.)  The Court has
reviewed the arguments raised in Defendants' Reply and has
independently searched the record for any evidence related to a
free exercise claim.  In that search, the Court uncovered facts
that might support a claim that the inaccessible restrooms at
Green Haven have substantially burdened Plaintiffs' right to
freely exercise their religion.  Although the Court has serious
doubts about whether Plaintiffs' alleged First Amendment claim
should ultimately survive summary judgment, given Defendants'
failure to argue for summary judgment on the claim in their
Memorandum of Law, and Plaintiffs' subsequent failure to argue
with any specificity that they retain a viable First Amendment

53

claim, the Court is unable to assess whether Plaintiffs'
asserted First Amendment claim has merit.  Accordingly, the
Court directs Plaintiffs to submit a letter-brief — including
citation to admissible evidence — regarding the nature and
viability of their First Amendment claim within ten days of the
date of issuance of this Order.  Defendants are directed to
respond within ten days of Plaintiffs' submission.  Upon
reviewing these submissions, the Court will determine whether
Plaintiffs' First Amendment claim survives summary judgment.

### IV. The ADA and the Rehabilitation Act

Title II of the ADA states that "no qualified individual
with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be
subjected to discrimination by any such entity."  42 U.S.C. §
12132.  Similarly, § 504 of the Rehabilitation Act provides
that:

> [n]o otherwise qualified individual with a disability . . .
> shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits
> of, or be subjected to discrimination under any program or
> activity receiving Federal financial assistance or under
> any program or activity conducted by any Executive agency
> or by the United States Postal Service.

29 U.S.C. § 794(a).  In its Order dated June 20, 2002, the Court
dismissed Plaintiffs' claims under the Title II of the ADA and §
504 of the Rehabilitation Act against the six individual

Defendants in their individual capacities.  Defendants now argue

that Plaintiffs' remaining claims for monetary relief under the

ADA and Rehabilitation Act should be dismissed; the Court

agrees.

### A. The ADA

Defendants argue that Plaintiffs' remaining claims for

monetary relief under Title II of the ADA against the State of

New York and the individual Defendants in their official

capacities should be dismissed because they are barred by the

sovereign immunity provided by the Eleventh Amendment[32] to the

United States Constitution.  In response, Plaintiffs assert that

the Eleventh Amendment does not serve as a bar to their claims

because Congress validly abrogated the states' sovereign

immunity with respect to Title II suits.  (Pls.' Mem. L. in

Opp'n to Defs.' Renewed Motion for Partial Summary Judgment, at

21.)  Although the Supreme Court has held that Title II validly

abrogates a state's sovereign immunity "insofar as [it] creates

a private cause of action for damages against the States for

conduct that <u>actually</u> violates the Fourteenth Amendment," the

Court has not explicitly defined the extent to which Title II

validly abrogates sovereign immunity for conduct that violates

---

[32] Plaintiffs' claims under the ADA and Rehabilitation Act against the
individual Defendants in their official capacities amount to a suit against
the state.  <u>See</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 529 (2d Cir.
1993) (stating that "[t]o the extent that a state official is sued for
damages in his official capacity, such a suit is deemed to be a suit against
the state, and the official is entitled to invoke the Eleventh Amendment
immunity belonging to the state").

55

Title II but does not violate the Constitution.  <u>United States</u>
<u>v. Georgia</u>, 546 U.S. 151, 159 (2006) (leaving the lower courts
to determine whether Congress's purported abrogation of
sovereign immunity is valid as to the class of conduct that
violates Title II but not the Fourteenth Amendment).

In this case, even assuming that Title II validly abrogates
sovereign immunity, the Court finds that Plaintiffs' claims for
money damages fail on the merits.  The Second Circuit has made
clear that to recover money damages under Title II of the ADA,
Plaintiffs "must demonstrate that the challenged actions were
'motivated by discriminatory animus or ill will based on
plaintiff's disability.'"  <u>Hinton v. The City College of New</u>
<u>York</u>, No. 05 Civ. 8951 (GEL), 2008 U.S. Dist. LEXIS 16058, at
*73 (S.D.N.Y. Feb. 29, 2008) (quoting <u>Garcia v. State Univ. of</u>
<u>New York Health Scis. Ctr.</u>, 280 F.3d 98, 111 (2d Cir. 2001)).[33]
Government actions motivated by discriminatory animus or ill
will are those "based on irrational prejudice or wholly lacking
a legitimate government interest." <u>Garcia</u>, 280 F.3d at 111.  In
order to establish discriminatory animus, "a plaintiff may rely
on a burden-shifting technique similar to that adopted in

---

[33] There are divergent views within this circuit as to whether <u>Garcia</u> remains
good law in the wake of the Supreme Court's decisions in <u>Tennessee v. Lane</u>,
541 U.S. 509 (2004) and <u>United States v. Georgia</u>, 546 U.S. 151 (2006).  <u>See</u>
<u>Olson v. State of New York</u>, No. 2:04-cv-00419-ENV-MLO, 2007 WL 1029021, at
*7-8 (E.D.N.Y. Mar. 30, 2007) (collecting cases).  However, after a close
reading of <u>Garcia</u> this Court concludes that <u>Garcia</u>'s requirement that a
Plaintiff demonstrate "animus or ill will" to recover monetary damages under
Title II survives those recent Supreme Court decisions.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 36 L.
Ed. 2d 668, 93 S. Ct. 1817 (1973), or a motivating-factor
analysis similar to that set out in Price Waterhouse v. Hopkins,
490 U.S. 228, 104 L. Ed. 2d 268, 252-258, 109 S. Ct. 1775
(1989)." Garcia, 280 F.3d 112.

The Court finds that Plaintiffs in this case have not
sufficiently demonstrated that Defendants' alleged failure to
alleviate inaccessibility conditions at Green Haven was
motivated by irrational discriminatory animus or ill will.  As
an initial matter, it is clear that Plaintiffs do not allege
that Defendants' actions — or failures to act — were motivated
by animus anywhere within the Fourth Amended Complaint.[34]
Additionally, the Court has searched the record and found no
evidence that Defendants or any other decision-making officials
at Green Haven — those responsible for addressing accessibility
concerns — harbor any ill will toward Plaintiffs because of
their disabilities.[35]  Indeed, the record clearly demonstrates
that Defendants have made efforts to meet the special needs of

---

[34] Plaintiffs' request to amend their Complaint to insert allegations of animus
is DENIED.  Based on the Court's review of the record, it is clear that any
such amendment would be futile.
[35] Although during his deposition testimony Plaintiff Gobern stated that he
had been told "everything from shit on yourself to pee on yourself," and
Stevens stated that he had been told in reference to his use of the
restrooms, "You guys in the wheelchairs, you can use it.  Get up and walk,"
Plaintiffs attribute such statements only to individual prison guards, not
Defendants or any other official responsible for making decisions regarding
accessibility issues at Green Haven.  (Gobern Dep. 13:10-11; Stevens Dep.
18:4-5.)  Indeed, Gobern later testified that when he brought these comments
to the attention of supervisory officials, specifically Defendant Artuz,
Artuz spoke with the individual who had made the comments and "[i]t didn't
really happen again."  (Gobern Dep. 13:17-14:11).

disabled inmates.  The Unit for the Physically Disabled at Green

Haven has been described by Plaintiff Shariff as "the only such

Unit in the entire system to address [his] needs and the needs

of other permanently wheelchair bound individuals."  (Shariff

Aff. ¶ 55.)  Evidencing the degree to which the UPD successfully

addresses Plaintiffs' needs, Plaintiff Shariff has stated that

he "endeavor[s] to be returned to the Green Haven Correctional

Facility so that [he] can be provided the opportunities []

associated [with] being housed" in that unit.  (Shariff Aff. ¶

54.)  Although Plaintiffs complain that ADA renovations have not

been made to Green Haven as swiftly or thoroughly as they would

like, the record is clear that Defendants have made efforts to

improve accessibility throughout the prison.  (See Stephenson

Dep. 15:17-18; Shariff Dep. 22:19-21, 33:5-34:3; Gobern Dep.

19:13-14, 20:6-14; 31:12-20, 32:1-11; Gowins Dep. 10:24-11:2.)

Indeed, Plaintiffs concede that over time "improvements have

been made [to] the accessibility of facilities in Green Haven to

permanent wheelchair bound individuals."  (Defs.' Supplemental

Rule 56.1 Stmt. ¶ 41; Pls.' Rule 56.1 Stmt. ¶ 41.)  As even

Plaintiff Stevens admits, "[t]hey [Correctional authorities] do

the best they can.  Jails weren't built with people like me in

mind."  (Stevens Aff. ¶ 44, Jan. 15, 2006.)  Providing special

housing for disabled inmates and making accessibility

improvements to Green Haven's facility over time is not behavior

consistent with a harboring of animus or ill will toward

disabled inmates.  Accordingly, the Court finds that neither

have Plaintiffs alleged nor does the record demonstrate that

Defendants' actions — or failures to act — were motivated by

discriminatory animus or ill will.[36]  Thus, Plaintiffs' claims

for money damages under the ADA are DISMISSED.

## B. The Rehabilitation Act

Although not argued in their Renewed Motion for Partial

Summary Judgment, Defendants assert in their letter dated

September 22, 2008 that Plaintiffs' remaining claims for

monetary damages under the Rehabilitation Act — those against

the State of New York and the individual Defendants in their

official capacitates — are barred by the Eleventh Amendment.

The Court agrees.

In Garcia v. State Univ. of New York Health Scis. Ctr., 280

F.3d 98 (2d Cir. 2001), the Second Circuit found that although

the enactment of § 504 exceeded Congress's powers under § 5 of

the Fourteenth Amendment, it was validly enacted pursuant to

---

[36] The Court's finding that there is a disputed issue of fact as to whether
Defendants were deliberately indifferent to Plaintiffs' needs with respect to
the accessibility of restrooms throughout the facility has no bearing on
whether Defendants were motivated by discriminatory animus or ill will.  See
Garcia, 280 F.3d at 115 (changing the standard for recovery of monetary
damages in claims against the state under Title II from deliberate
indifference to proof of discriminatory animus or ill will).  Even if
Defendants' failure to act with sufficient speed in making Green Haven's
common restrooms wheelchair accessible amounts to deliberate indifference,
there is no indication in the record that Defendants' alleged failures were
motivated by discriminatory animus or ill will.

59

Congress's power under the Spending Clause of Article I.[37]   See
Garcia, 280 F.3d at 113.   When enacting legislation pursuant to
the Spending Clause, Congress may require that as a condition of
accepting federal funds a state agree to waive its sovereign
immunity in federal court.   Id. at 113.   With respect to § 504
of the Rehabilitation Act, Congress has imposed just such a
condition.   See 42 U.S.C. § 2000d-7 (providing, in relevant
part, that a "State shall not be immune under the Eleventh
Amendment of the Constitution of the United States from suit in
Federal court for a violation of section 504 of the
Rehabilitation Act of 1973").   Before a state may be considered
to have waived sovereign immunity, however, the state must
knowingly and intentionally relinquish its Eleventh Amendment
rights.   See id. at 114.

The Second Circuit explained in Garcia that although
Congress had evinced a clear intention to condition the
acceptance of federal funds on a state's waiver of its Eleventh
Amendment immunity in § 504 suits, that was "not sufficient . .
. to find that New York [had] actually waived its sovereign
immunity in accepting federal funds."   Id. at 113-14.   The

---

[37] As the Second Circuit explained in Garcia, § 504 of the Rehabilitation Act
and Title II of the ADA "offer essentially the same protections for people
with disabilities."   Garcia, 280 F.3d at 113.   "Indeed, the most significant
distinction between Title II of the ADA and § 504 of the Rehabilitation Act
is their reach.   While Title II applies to all state and municipal
governments, § 504 applies only to those government agencies or departments
that accept federal funds, and only those periods during which the funds are
accepted."   Id. at 113 n.2.

Circuit elaborated that at the time New York had accepted the funds relevant to that case, § 504 was reasonably understood to abrogate New York's sovereign immunity under Congress's Commerce Clause authority, as opposed to its Spending Clause authority. Id. at 114.  Thus, during the time period relevant to the Garcia action, "a state accepting conditioned federal funds could not have understood that in so doing it was actually abandoning its sovereign immunity from private damages suits . . . since by all reasonable appearances state sovereign immunity had already been lost."  Id.  As a result, the Garcia Court concluded that New York had not knowingly waived its sovereign immunity in that case and dismissed Plaintiff's claims under § 504 as barred by the Eleventh Amendment.  Id. at 114-15.

The question before the Court in this case is whether Plaintiffs' claims for monetary relief under § 504 arose before or after New York can be said to have knowingly waived its sovereign immunity by accepting federal funds.[38]  Plaintiffs' Fourth Amended Complaint is dated September 29, 1998 and was filed on October 15, 1998, and thus all claims for relief in this action — including Plaintiffs' claims under the Rehabilitation Act — arose before that date.  In their letter of September 22, 2008, Defendants state that as a matter of policy New York has not argued Eleventh Amendment immunity with respect

---

[38] Defendants do not argue that New York was not accepting federal funding during the time period at issue.

to Rehabilitation claims arising after Garcia — which was decided on September 25, 2001 — on the theory that the Second Circuit's decision put the state on notice that the continued acceptance of federal funds would constitute a waiver of sovereign immunity.  (Defs.' Letter Dated Sept. 22, 2008, at 6.) This Court has previously found, however, that New York knowingly waived its sovereign immunity several months earlier — as of February 21, 2001 — the date on which New York should have suspected that § 504 was not properly enacted pursuant to § 5 of the Fourteenth Amendment based on Supreme Court decisions.  See Cardew v. New York State Dep't of Corr. Servs., No. 01 Civ. 3669 (BSJ), 2004 WL 943575, at *8 (S.D.N.Y. Apr. 30, 2004). Regardless of whether New York knowingly waived its sovereign immunity on February 21, 2001 or September 25, 2001, it is clear that New York had not knowingly waived its immunity at the time Plaintiffs filed their Fourth Amended Complaint on October 15, 1998.  Accordingly, Plaintiffs' claims for monetary relief under § 504 are barred by the Eleventh Amendment and are, thus, DISMISSED.

### C. Summary

In summary, Plaintiffs' claims for money damages under Title II of the ADA and § 504 of the Rehabilitation Act are DISMISSED.[39]  The Court notes, however, that this holding in no

---

[39] Because the Court finds that Plaintiffs' claims for monetary damages under

way impacts Plaintiffs' prayer for injunctive relief under both Title II and § 504.

## CONCLUSION[40]

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. Plaintiffs' claims pursuant to 42 U.S.C. § 1983 based on the Eighth Amendment are DISMISSED with the exception of Plaintiffs' claim regarding the accessibility of the Green Haven restrooms. Plaintiffs' claims based on the Fourteenth Amendment are DISMISSED in their entirety. The Court reserves decision on Defendants' request for summary judgment on Plaintiffs' First Amendment claim until the Court receives the above-directed briefing on this issue. Plaintiffs' claims for money damages under Title II of the ADA and § 504 of the Rehabilitation Act are DISMISSED. All claims for injunctive relief asserted by Plaintiffs Shariff and Gowins are DISMISSED. Plaintiffs' claims for injunctive relief with respect to the condition of the C&D yards, the accessibility of telephones and water fountains throughout the facility, and the accessibility of the auditorium

---

the ADA and Rehabilitation Act must be dismissed for the reasons set forth above, the Court need not address Defendants' argument that suit under the ADA and Rehabilitation Act cannot be maintained against the individual Defendants in their official capacities because Defendants are not "public entities" or "programs or activities."

[40] Given the Court's above holdings, the Court need not address Defendants' arguments regarding the res judicata effect of prior judgments against Shariff and Bartley on claims asserted here, the collateral estoppel effect of a certain judgment against Shariff, and the alleged double recovery by Suluk on one of his claims.

restrooms are DISMISSED.   Thus, the only claims that remain part of this litigation are: (1) all Plaintiffs' claims under the Eighth Amendment for money damages based on the accessibility of the Green Haven restrooms; (2)   Plaintiffs' claims under the First Amendment; and (3) Plaintiff Stephenson's claims for injunctive relief under the ADA and Rehabilitation Act with respect to the following conditions: (a) the condition of Fay Field; (b) the condition of the visiting-room yard; and (c) the accessibility of bathrooms (with the exception of the auditorium bathrooms) throughout Green Haven.

The Parties are additionally directed to submit a Joint Pre-Trial Order to the Court for trial as to Plaintiffs' remaining claims for injunctive relief and damages within thirty days of the date of issuance of the Court's decision on Plaintiffs' First Amendment Claim.

**SO ORDERED:**

_____
BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:      New York, New York
            August   9 , 2009

64